Filed 11/29/22 P. v. Burnette CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077419 |
| v. | (Super.Ct.No. INF1801341) |
| BEAU MIKE BURNETTE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. James S. Hawkins, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.). Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

In 2021, a jury convicted Beau Burnette of one count of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)) and other related firearm possession offenses (Pen. Code, §§ 12022.53, subd. (b), 29800, subd. (a)(1), 30305, subd. (a)). The parties agreed to reduce the firearm enhancement under section 12022.53, subdivision (b), of the Penal Code to an enhancement under Penal Code section 12022.5, subdivision (a), and Burnette was sentenced to 28 years in prison. On appeal, he argues that the trial court violated his constitutional right to due process by admitting a 911 recording without allowing him to confront the witness against him. We find no violation and affirm.

BACKGROUND

A. *The Victim*

One night in July 2018, Burnette approached Donovan M. after Donovan exited a 7-11 store. Donovan and Burnette had known each other for about nine years. Donovan testified that Burnette lifted his white tank top and showed Donovan a firearm that Burnette had tucked into his waistband. Burnette placed his arm around Donovan's neck, and shoulder and said, "'Let's take a walk'" in an abrasive manner. Burnette said that Donovan had something of Burnette's. Burnette dragged Donovan away from the store. Donovan did not go with Burnette voluntarily.

Burnette led Donovan toward Donovan's apartment. On the way, Burnette took out the gun and chambered a round by pulling back the slide. Burnette put the gun to Donovan's head. As the men arrived at Donovan's apartment, Donovan noticed flashing red and blue lights from a police car. A law enforcement officer walked toward Burnette

2

and Donovan. Burnette shoved Donovan toward the officer and ran away. Burnette wrapped the gun in his shirt and threw it on top of a roof.

Law enforcement recovered a loaded semiautomatic firearm and a white tank top from the roof. Several hours later, a law enforcement officer showed Donovan a photographic lineup of six possible suspects, and Donovan identified Burnette.

B. *The 911 Call*

Christina R. was parked in the 7-11 parking lot when Burnette confronted Donovan in front of the store. She called 911. The prosecution played a recording of that call for the jury and gave the jurors a transcript of the call. Defense counsel did not object.

Before trial, the prosecution argued in its trial brief that the 911 call was admissible as an excited utterance under Evidence Code section 1240.[1] The prosecutor also argued that the 911 call was not testimonial, so its admission would not violate Burnette's confrontation rights. Defense counsel did not mention the 911 call in her trial brief. At a pretrial hearing, defense counsel argued that the 911 call did not fall within the excited utterance exception to the hearsay rule. The court overruled the objection.

When Christina called 911, she asked the 911 dispatcher to send law enforcement to the 7-11 immediately. She saw a man come out of some bushes next to the store, pull

---

[1] Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

out a gun in front of the store, and take another guy with him. Christina was afraid when she saw the gun, so she "took off." Christina described both men and noted that the man with the gun was wearing a white tank top. Christina followed the men as they walked away. She remained on the call and updated the 911 dispatcher with what she saw. While Christina was on the phone, she saw law enforcement officers, flagged them down, and ended the phone call.

The 911 recording was played for the jury on the first day of trial. At the close of the first day, the prosecutor informed the court that it had been unable to locate Christina, so she likely would not be testifying. Defense counsel noted that Christina's absence gave counsel "pause" because Christina would not be subject to cross-examination, even though the 911 recording had been admitted. The prosecutor responded that the recording had been properly authenticated. The court asked defense counsel if there was anything else she wanted to put on the record, and she stated that there was not.

C. *Law Enforcement Interview of Burnette*

The day after the incident, law enforcement interviewed Burnette. The interview was recorded, and a recording was played for the jury. Burnette initially denied seeing Donovan at 7-11 the day before. He then admitted that he had seen Donovan at 7-11 that day but said that they just engaged in a "basic conversation." Burnette denied that he threatened Donovan or grabbed him. Looking at still images from video footage taken at 7-11 on the day of the incident, Burnette explained that the images depicted him giving Donovan a hug and putting his arm around Donovan. Burnette said that Donovan led

4

him to a nearby residence.  Burnette admitted that he possessed the firearm but denied taking it out of his waistband.

## DISCUSSION

Burnette argues that the admission of the 911 recording without giving Burnette an opportunity to cross-examine Christina "was so serious and had such a prejudicial impact that the erroneous admission rendered the trial fundamentally unfair, in violation of [his] right to due process."  We are not persuaded.

The confrontation clause of the Sixth Amendment of the United States Constitution guarantees criminal defendants the right "to be confronted with the witnesses against" the defendant. (U.S. Const., 6th Amend.)  *Crawford v. Washington* (2004) 541 U.S. 36, 59 (*Crawford*) held that the confrontation clause operates as a general bar against the admission of testimonial hearsay unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine."  In *Davis v. Washington* (2006) 547 U.S. 813, 822 (*Davis*), the United States Supreme Court concluded that a victim's statements made to a 911 operator generally are not testimonial. (*Id.* at pp. 817-819, 828.)  The court explained: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to

5

establish or prove past events potentially relevant to later criminal prosecution." (*Id.* at p. 822.)

Burnette concedes and we agree that "*Crawford* and *Davis* foreclose the argument that [the] 911 caller's statements were testimonial hearsay [and] inadmissible for that reason." (*Davis*, *supra*, 547 U.S. at p. 822.) He also concedes that the recording was properly admitted under the excited utterance exception to the hearsay rule. He nevertheless argues that "given the crucial role the evidence played in the prosecution's case, it was critical that the defense have an opportunity to confront and cross-examine the 911 caller." Burnette's argument thus is that even though the 911 recording did not constitute testimonial hearsay its admission nevertheless violated due process because of "the pivotal role the evidence played." The argument fails for several reasons.

The People contend that Burnette forfeited the argument that the admission of the 911 call violated his due process rights, because he did not make the argument in the trial court. We agree. (*People v. Partida* (2005) 37 Cal.4th 428, 433-439.) The only objection defense counsel made to the admission of the recording was that it did not fall within the excited utterance exception to the hearsay rule. When defense counsel learned that Christina was not available to testify, counsel noted that the prior admission of the 911 call gave her "pause" because she would not be able to cross-examine Christina. Counsel did not articulate a specific objection based on the new information about Christina's unavailability, so the trial court did not make any ruling. Moreover, Burnette's counsel did not argue that the prior admission violated Burnette's right to

6

confrontation or rendered the trial fundamentally unfair because Burnette would not be able to confront or cross-examine Christina, which is what Burnette now claims. Because Burnette now argues "that due process required exclusion of the evidence for a reason different from his trial objection," his "claim is forfeited." (*Id.* at p. 436; see also *People v. Sanders* (1995) 11 Cal.4th 475, 510, fn. 3.) We nevertheless address the merits of the claim because Burnette argues that the failure to object at trial amounted to ineffective assistance of counsel.

The right of an accused in a criminal trial to due process under the Fourteenth Amendment to the United States Constitution includes "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf." (*Chambers v. Mississippi* (1973) 410 U.S. 284, 294.) "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." (*Lisenba v. California* (1941) 314 U.S. 219, 236.) "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." (*Dowling v. United States* (1990) 493 U.S. 342, 352.) The type "of infractions that violate 'fundamental fairness'" is defined "very narrowly." (*Ibid.*)

A defendant "raising a due process claim to exclude relevant evidence must sustain a heavy burden." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179.) "While adherence to state evidentiary rules suggests that the trial was conducted in a

7

procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness." (*Jammal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 919.) "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." (*Id.* at p. 920.)

Burnette argues that admission of the 911 call without giving him the opportunity to cross-examine Christina rendered the trial fundamentally unfair because the evidence "was so serious and had such a prejudicial impact." We agree that the evidence was highly probative of Burnette's guilt. The jury could reasonably and permissibly infer from the statements Christina made to the 911 dispatcher that Burnette committed the offenses of assaulting Donovan with a semiautomatic weapon and possessing a firearm. Moreover, because Christina was describing the events as they unfolded, Christina did not have time to reflect or to fabricate, thus indicating that the statements were reliable. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1266.) Given the relevance and reliability of the 911 call, its admissibility under both the confrontation clause and the Evidence Code, and the permissible inferences that the jury could draw from it, the fact that the evidence was highly probative of guilt did not render the trial fundamentally unfair. We therefore conclude that Burnette's due process rights were not violated by the admission of the 911 call.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ           
J.

We concur:

FIELDS           
Acting P. J.

RAPHAEL          
J.